The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 18-1456, Apple v. Voip-Pal.com. Mr. Perry, whenever you're ready to proceed. Thank you, Chief Judge Prost, and may it please the Court. This appeal has been rendered moot by the Court's decision in the Twitter appeal, which held that the representative claims of both patents are ineligible under Section 101. As a result, there is no longer a case or controversy between the private parties, and the orders under review should be vacated. Let me just interrupt you on that point. I'm sure you're going to get to this. In your argument in this regard, you make sort of separate arguments. Clearly, we understand the argument with respect to the overlapping claims. But even your presentation with regard to the non-overlapping claims, you use the word, and I think it's fair, which is, it appears to be moot. So, there's a little wiggle room there. It is a tougher, closer question, is it not, than the overlapping claim? Absolutely, Chief Judge Prost. The parties agree that the overlapping claims are moot. As to the non-overlapping claims, we submit that it's a question of claim preclusion or res judicata. These claims were included in the District Court complaint. They were dropped by Voight-Powell in response to an order from Judge Koh, which required Voight-Powell to pick its quote, take your best shot and pick your best ones. Voight-Powell did not appeal the claim narrowing order. Under this court's decision in the Katz case, which we cited in our suggestion, it is Voight-Powell's burden to show any patentable distinctness between the 20 narrowed claims and the 35 claims originally identified in the complaint. Voight-Powell has had three opportunities to make that showing. In the 101 appeal, it cited the claim narrowing order in its notice of appeal, but it didn't pursue that argument on appeal. So, we submit it's forfeited. In this appeal, Apple, in its opening brief, noted that the Twitter appeal would moot this appeal, and in its responsive brief, Voight-Powell made no response to that argument, rather than making the required showing, therefore forfeiting again. We then filed our suggestion of mootness, and we recognize, Your Honor, that it's a close question. We also recognize, by the way, that Voight-Powell has changed counsel during these proceedings, and Mr. Hudnell had not addressed any of these issues. So, we said in our suggestion of mootness, in so many words, it is Voight-Powell's obligation to show patentable distinctness between the 20 claims and the 35. That is its burden under Katz. That is its burden under Simple Air. That is its burden under any claim preclusion doctrine, because our position is that the claims are essentially the same. We demonstrated that in the suggestion as to the illustrative and representative claims, one in 74 of the 005 patent, and Voight-Powell doesn't dispute it. Voight-Powell, in its response to the suggestion ordered by this court, does not argue that there is any patentable distinctness among these claims, and that's the third opportunity, and we would say three strikes and you're out, Your Honor. It has had the opportunity and the obligation to show patentable distinctness, and it failed to do so. Therefore, the judgment in the first case encompasses all of the claims asserted in the complaint, including the 15 non-overlapping claims, and that's why the whole case is moot. Counsel, this is Judge Urena. I'd like for you to explain exactly how Katz fits into this case. Yes, Your Honor. Katz sustained, of course, the general proposition that district courts can order patent holders to narrow their claims when they assert a large portfolio of multiple claims, and that when the challengers make an initial showing that there is duplication among the claims, the burden shifts to the patent owner to show that any non-asserted claims are patentably distinct from the asserted claims.  There's lots in the Katz decision, of course. Additionally, the Katz case says that it's the patent holder's obligation, if it believes that patentably distinct claims have been excluded as a result of the narrowing order, to challenge that on appeal. Voight-Powell didn't challenge that in the 101 case, didn't challenge the exclusion order. In other words, acquiesced in the district court's ruling that all 20 claims, all 35 claims, are essentially the same. Of course, that was borne out in the actual case. Only one representative claim from each patent was tested, and Voight-Powell didn't even challenge the representativeness of that claim. There is no patentable distinction between the various claims in these patents. Again, the reason that Katz is important here, Judge Reina specifically, is Voight-Powell, in response to our suggestion of mootness, said two things. One, that it has no obligation to identify patentable distinctness, and two, that Apple had cited no authority for such an obligation. Both of those are wrong. Counsel, how can we know that there's claim preclusion? We won't know that until a later point in time. If a later case is filed, that's when it's determined whether there's claim preclusion or not. Well, Your Honor, in two district court cases, that would be right. But claim preclusion also applies across district court to administrative proceedings. We know the court can evaluate it here in the context of the jurisdictional question. Voight-Powell cannot raise these claims against Apple in the future. That is our submission. There is no case or controversy as to those claims, because it is barred as a matter of law from asserting them. It has no answer to that, or we haven't heard one yet. And if that's correct and we submit that it is, then this whole administrative proceeding is by the by. It makes no matter to the parties, because their legal dispute was fully and finally resolved in the district court litigation, which was affirmed on appeal. Let's assume this all went down while the case was still pending before the board. Is this something the board – could you or would you or should you have filed a motion for mootness to the board? And what then would happen? Would the board have to do – the board, which is not supposed to do 101, but only 102 and 103, as we know – was the board supposed to make a determination as to whether or not they're patently distinct? No, Chief Judge Prost, for two reasons. I mean, one, factually that's not the sequence of events, of course. But even in the hypothetical world, the board is not bound by Article III, unlike this court, so that the board may have administrative powers to evaluate patents, but when the case gets to this court and Article III kicks in, if there is no longer a case or controversy, this court is not authorized by our Constitution to render advisory opinions, yet that's all that would happen in the appeal if the court were to decide it. So it's an implementation of Article III here. Now, to be clear, as a practical matter, if the mootness had arisen during the board proceedings, we would have notified the board. The board could have made a decision, but I just want to make clear that Article III doesn't apply of its own force to the board, whereas it, of course, does to this court. Now, you made a passing reference in your remarks to the representative claims that were identified. Those were identified only with respect to the remaining overlapping claims, right? That was done and considered after the other claims, right? That is correct, Your Honor. Judge Crowe ordered Voipel to pick its, take your best shot and pick your best ones. That was her quote. So Voipel did that, and then she picked a representative claim. So that was when only the 19 were still left, and the others were gone. Correct. I think Judge Hughes had a question, if I'm not mistaken. I thought I heard his voice. Judge Hughes? No, I don't. I'm sorry. I'm sorry. One last point on mootness, Your Honor, and I'd move on. The board also selected illustrative claims, again, which Voipel didn't dispute, one for each patent, and treated them all the same. And as to the 815 patent, the representative claim chosen by the district court, Claim 1, is the same as the illustrative claim chosen by the board, Claim 1, and the only claim, of course, actually analyzed in the final written decision. So we would submit, even if there is some doubt as to the non-overlapping claims, given the identicality and the overlappingness of Claim 1 of the 815, the court would have to vacate the 815 final written decision. And then as to the 005 patent, we demonstrated in a claim chart in our suggestion that there is no difference of substance between Claim 1 and Claim 74, the illustrative claim and the representative claim, respectively. And therefore, Mr. Hudnell's Voipel's concession also requires vacater of the 005 final written decision because in both cases the board evaluated claims that were declared ineligible. Can I just ask you one final question on this? Unless my colleagues obviously have something else. This is such an odd set of circumstances, and I know we're not that far into the IPR regime and all of these questions. There's no other case that we've ever dealt with that was pretty similar to this, right? Not that we've found or that I'm aware of, Chief Judge Prost. This is Judge Reina. We have addressed an issue in some of our prior cases that we find in this one. Voipel here is arguing that the appeal is not new because it could seal petition for cert before the Supreme Court on our decision in Twitter. Can you speak to that? Yes, Your Honor. The mandate of this court in Twitter issued in May. Voipel made no motion to stay the mandate or to recall it. Therefore, that judgment of this court is binding and preclusive on Voipel. Mr. Hudnell in his submission did not make any representation that Voipel intends to petition for cert. He merely noted that the time hasn't run. Of course, that time will run in October. We'll know whether or not they have by then. But the pendency of a cert petition doesn't affect the res judicata effect of a judgment once the mandate issues. That's one of the purposes of the appellate mandate, is to make clear that when the preclusive effect of an appellate judgment kicks in and the mandate has issued and therefore is pending. But there is no finality in Twitter if the window is still open for an appeal. There's no finality for certain purposes, but there is definitely finality for res judicata purposes because the mandate has issued, Judge Reyna. Mr. Perry, this is Judge Hughes. I just have one question. For res judicata to apply, somebody has to determine that these non-overlapping claims are, whatever the right term is, basically the same as the ones found ineligible, correct? Correct. Who does that in this circumstance? This court, Your Honor. So let me answer that in steps if I may. The question is whether the non-overlapping claims are the same, is quote-unquote essentially the same, or patentably distinct. That's the simple error decision, which describes the res judicata consequences of separate patent claims. Who makes that determination is, in general, the second court. Res judicata is always determined by the second court, not the first court. In this circumstance, this panel is, in effect, the second court. Ordinarily, there may be some dispute, right, about whether or not there is patentable distinctness. This is the importance of the Katz case, showing that it is Voight-Powell's burden to show patentable distinctness, and the point of my recitation earlier that it has now had three clear and open opportunities to make that showing in this court, the 101 brief, the merits brief in this case, and the response to the suggestion of mootness, and each time Voight-Powell has declined to make that showing. It hasn't even tried. Can I just interrupt you, sorry, because I'm a little curious as to what your implication of their pointing out that they haven't tried to make that, because are you arguing that they've waived the right to make that patentable distinctiveness argument now? Your Honor, we do think they waived it in the 101 appeal when they noticed an appeal from the claim narrowing order but then didn't pursue it in its brief. However, we recognize that this is sort of uncharted waters, and so we sort of spotted them two additional opportunities. We raised this issue in our opening brief, and they didn't respond. Okay. You're almost at it, or you're out of time, but can I just wrap this up real quickly? So you think we have the authority in the first instance in an IPR appeal where 101 issues can't be considered to determine whether these are patently distinct for 101 purposes? For race judicata claim preclusion purposes, correct, Your Honor. I don't think that the nature of the judgment makes any difference. The question is whether, as a matter of claim scope, there is any patentable distinctness between them, which would matter for obviousness or anticipation or anything else. I mean, yes, it was a 101 determination, but the point is they asserted, VoIPAL asserted all of these claims in its complaint. A subset was expressly adjudicated, but the judgment we submit encompasses all of them, and they are therefore barred by race judicata from asserting them. But I think you said earlier, and I'm sorry to take you too much over, but I think you agreed that the board could not have found race judicata on 101 grounds if it was at the board, right? I don't agree with that, Your Honor. I think the board would not have determined a 101 ground, and the board does not have procedures for determining race judicata because that's a judicial construct. However, I think the board could have done so, and we would have raised it to the board had it come up at that time. The way the facts here turned out, it came up after the board proceedings had concluded. And I'm sorry to belabor this, but I can't resist. You just said in passing that they have the burden to show that the claims are patently distinct. Where is that coming from? Is that coming from the fact that they should have challenged the district court's initial determination that they should only pick these and not the others? Where is that burden coming from? Well, it's ultimately from Katz, Your Honor, and it is the point that the parties in the 101 case made the showing that the claims are all essentially the same. Judge Koh agreed with that, ordered Voight-Powell to pick its 20 best, and it did. There was never any dispute in the record in that case as to whether there was distinction among the claims. Then Katz says, in so many words, if the patent holder thinks that one of the excluded claims, the non-asserted claims, is patentably distinct, it is its obligation to raise that on appeal. It didn't do it in that appeal, and it didn't do it in this appeal, even though we sort of threw down the gauntlet and challenged them twice to do so. And at some point it has to be somebody's burden, somebody has the obligation. We say they're all essentially the same. Judge Koh agreed. The board agreed. Voight-Powell has to show some difference in order to avoid mootness. We submit. Okay. Well, we obviously have all of the arguments on the underlying merits in the brief, so we can easily rely on that. So sorry we've taken all your time just on this one question, but I think it's important. Thank you. Thank you, Your Honor. So, Mr. Phan and Mr. Hudnell, you've divided up your time. You want to preface your remarks by telling us what you're going to talk about. Hi. This is Dennis, and I believe we're dividing our time. Seven minutes for me first on behalf of the PTO, and then eight minutes on behalf of Mr. Hudnell. And if the court is all right, I'm happy to just start. Well, we didn't with Mr. Perry. We obviously never reached anything about the underlying merits of the IPR. Our entire argument was exclusively based on this mootness question. So do you have anything on that? Did the PTO, you want to talk about that? We, Your Honor, we don't. We have intervened only on the sanctions issue, and we think the sanctions are within the board's broad discretion. And so, of course, if this court doesn't have questions for the government on the sanctions issue, we're more than happy. The thing I was going to say was we're more than happy to cede our time to Mr. Hudnell from Boyce Powell to address the mootness questions. Okay. Well, unless my colleagues disagree, we didn't raise it in the first appeal, and I don't have any questions on that. Therefore, I turn to my colleagues. Are they comfortable with this? No questions. I don't have any questions. Okay. All right. So let's hear from Mr. Hudnell. Good morning, Your Honors. May it please the court. This appeal is not moot as to the non-overlapping claims. In fact, Your Honor, I believe that you pointed out one of the threshold problems with Apple's argument is that they say in their suggestion of mootness, they said that the case appears to be moot. Okay. But before we get to that, let me just question you about the overlapping claims. So there's no dispute, correct, that the overlapping claims are moot?  That is correct, Your Honor. To the extent that our ability to petition for a cert to the Supreme Court should not defeat mootness, we would agree that the appeal as to the overlapping claims is moot. So your view is that we would vacate a portion of the opinion, dismiss a portion of the opinion, or how would we proceed to deal with that? With respect to, again, let's just cover the overlapping claims first, and then we'll hear your argument on the non-overlapping. Yes, correct. On the overlapping claims, you are able to dismiss the case as to those claims. Okay. This is Greg Brannon. Wouldn't we have to vacate just that portion and with instructions that the board would dismiss? Yes, Your Honor. I mean, I think the – I wasn't sort of specifying a particular procedural mechanism. The only thing I was saying was that the appeal could be dismissed as to the overlapping claims, and if that requires vacating and remand to the board with instructions to dismiss procedurally how that happens, you know, I didn't have a preference. All right, thank you. Okay, please proceed on the non-overlapping claims. Yes, Your Honor. So, Your Honor, this court has announced a test for mootness, and the test is whether the release sought would, if granted, make a difference to the legal interests of the parties. We cited the Nastaska case, 58 F3D, 1578 at 1580, for this proposition in our response to Apple's suggestion of mootness. The non-overlapping claims had not otherwise been declared invalid, so obviously it makes a difference to the interests of the parties. This makes a difference to the interests of the parties, and therefore they're not moot. Well, maybe it makes a difference. What about Mr. Perry's argument that the claims are patently indistinct and that it was your burden, and this has been going on up through the district court, it was your burden to show they are patently distinct and also your obligation to have appealed the district court's order, etc., all through the chain. You heard his argument this morning and in his briefs. What's your response to that? Yes, Your Honor. So, first, first, claim conclusion is not at issue here. These claims are not before the district court, these claims are not before the board, the claims are not before this court in this matter, and so there's no, you know, Mr. Perry's argument, which I should point out is not contained in Apple's suggestion of mootness. He cites no authority for that proposition. He cites the Catt case. When you look at their suggestion of mootness to see what authority they cited for placing the burden on us to establish that these claims were patently indistinct, they cite no authority for that. In fact, what we did in our suggestion of mootness, Your Honor, is we pointed to the Simple Air case to show that one of the requirements to determine whether the claims are patently distinct is to have a claim construction, and there was no claim construction at the district court. There's been no claim construction of these claims whatsoever. Wait a minute, wait a minute. I mean, this started with Judge Koh. The assumption, I mean, let's just apply common sense here. Judge Koh wants to limit the number of claims, which is perfectly within her prerogative and something they do all the time. At that point, if these claims were patently distinct from the overlapping claims that we've talked about, wouldn't the obligation be on you to come forward and do something about that? If we wanted to keep them in the case, Your Honor. I mean, the reason Judge Koh narrowed the scope of the case in that case was because she indicated at a hearing that she was only going to consider 20 claims for the purposes of Apple's motion to dismiss under 35 U.S.C. Section 101. So at that point, Your Honor, and I think one significant point to the issue that's on the table here today is that we have no record, and I can't recall specifically how those claims were dismissed and what the paper was that dismissed them. It's not in the record here. I have to go back and check. But I'm assuming that we dismissed those claims without prejudice. So for Apple to come now and assert that we should have kept those claims in the case for some other purpose, I mean, there's no way based on the record here to determine how those claims were actually dismissed or the reasons that they were dismissed in the previous case. Are you suggesting that we don't have the authority here at the Article III level to make that assessment on our own to look at the claims and say, okay, are they patently— leaving aside who's got the burden to show what. Do you say that we're without authority to make that determination here? No, Your Honor. I don't think that the court is without authority to do that. But as the court has said time and time again, it's not this court's obligation on the first instance to construe these claims. This would have had to have been done at the district court level, and that wasn't done because those claims were dismissed. So if we're going to have a claim construction— Well, the question isn't really how to construe the claims. The claims are to look at one claim versus the other and say are they patently distinct in the context of 101, right? So it's not technically a claim construction. It's a different kind of analysis, right? Well, I don't completely agree with that, Your Honor, because as we cited from the Simpleware case in our suggestion of mootness, it says when different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted claims in the two suits are essentially the same. And so there has to be a determination made as to whether the scope of the claims is essentially the same. And that determination inherently implicates claim construction. This is Judge Reyna. Didn't Judge Koh make that determination when she ordered the parties to decide amongst the universal claims that were before her to pick out the 20 best claims and to give it their shot? No, Your Honor. Judge Koh, I mean, this was one of the main issues in the appeal, in the Twitter case, is the fact that Judge Koh did not conduct claim construction. Well, it's not claim construction. It's just a determination of whether the claims are patently distinct or essentially the same. I'm sorry. I didn't mean to talk over you, Your Honor. Go ahead. Right, Your Honor. So my response to your question is that her determination was simply, I'm only going to consider 20 claims for Apple's Rule 12 motion to dismiss on 101. That's it. There was nothing more and nothing less. She wasn't asking us to pick representative claims. She wasn't dividing up the set of claims. One of these patents, the 815 patent, has over 100 claims. She wasn't asking us to divide claims into categories and give her representative claims. She just said, pick 20, and that's all I'm doing. And how you pick those 20 is completely up to you. And so we picked 20, and we dismissed 20, and that was it. Well, in your original complaint in this case, when you cited all of these claims, and I don't know, was this the full, was it just these 19 and 14, or were there other claims that were in the complaint? Again, Your Honor. When you initially filed the case, I guess my question is, and then I can look back at the record before Judge Koh, myself, but was there any differentiation of the claims, or were the assertions in the original complaint just grouping all of these claims together? Again, I'm suffering because, again, we don't have that record here, but my recollection, Your Honor, is that the complaint only identified one claim for the purposes of meeting the pleading standard at the complaint stage, and that the identification of asserted claims came later, either through preliminary intrinsic contention or something similar to that. And then at that point, at the hearing where Judge Koh ordered that the claims be reduced, she said, Pick 20. Those are the ones I'm going to consider for the motion to dismiss, and we dismissed seven claims. So what do you see in the future? Your Honor, if you were to assert, let's assume this case went down and we agreed with you the non-asserted claims live. They weren't rejected in the IPR. Let's assume that that decision is affirmed. So your view is you're free to assert those, and if you assert them against Apple, presumably they would make the same argument on 101. It would be a new game entirely. Presumably there would be no race judicata effect, no relevance to Judge Koh's earlier determination that we've affirmed. I would fully assert, well, two things, Your Honor. First, at Voight-Potts positions, those claims are still alive. They're still valid. They have not been declared invalid by any court. If we were to assert them in another case against Apple, they would have full opportunity to make the same claim conclusion arguments that they're trying to make now. So I would expect there would be a battle over whether Voight-Potts would be precluded from asserting those claims. But that, again, I think needs to be decided at the district court level because it implicates issues that simply aren't present in this appeal, and for most of those reasons is the need for claim construction. This is Judge Hughes. I'm still a little confused. So if that hypothetical happens, if you assert them in district court, and if somebody says the prior decision is race judicata, I take it that the question would then be whether the claims that haven't already been declared ineligible are patently distinct. Is the question of whether claims are patently distinct a legal question or a factual question? I would say, well, I believe that it would be a legal question, Your Honor. I mean, it would be a legal question, ultimately, with perhaps some underlying factual issues, but ultimately it would come down to a legal question. So let's just assume there are no – I get that there may be underlying factual issues on claim construction, but let's just assume for purposes of this case there aren't, and it's a pure legal question. Why don't we have the authority to make that determination now in order to determine whether our earlier decision is race judicata as to the eligibility of these claims? Yeah, and again, Your Honor, I think the court does have the – I'm not disputing that the court has the authority to do this, but what I am saying is that in order to do that, there would need to be claim construction to assess the scope of the claims. There's certainly not enough in Apple's suggestion of movement. I'm a little confused about that, too, because the 101 question often can proceed without claim construction. We affirm many cases where somebody's been granted a 12B6 on 101 in eligibility prior to claim construction. So let's assume as a court we think the claims are pretty clear and don't require any further claim construction, and looking at that, those claims, and comparing them to the ones that are already found ineligible, we don't see any patentable distinction. Is it your view that we do or don't have the authority to do that? Again, Your Honor, I'm not disputing that the court has the authority to do that. I think the issue with the hypothetical that you just presented is that the case law with respect to 101 and claim construction says that if there is a dispute over a particular term, and we've raised this throughout the Twitter appeal, that there were disputes over a particular term. We even raised this in our petition for re-hearing and re-hearing en banc that there were significant disputes with respect to claim construction that the district court didn't consider. So if there's a dispute, there have been. You've got to choose. I just wanted to ask, Apple suggested mootness here because these are patentably indistinct. Have you raised specific assertions of claim construction problems that would prevent us from finding them patentably indistinct? I didn't see any of that here. In our response to the suggestion of mootness, no, Your Honor, because all Apple did was put up a chart that had the claim language of one claim that matched up against the claim language of another claim. They didn't articulate the argument for why these claims are patentably indistinct, and in the words of my friend Mr. Perry, they're shifting the burden to us to actually articulate why they are patentably distinct. But isn't that the way the arguments work? If they make an allegation, an argument, that these claims should be subject to race judicata because they're patentably indistinct, and they say the claim language is nearly the same or so similar that they're patently indistinct, doesn't that shift the burden to you to claim why they are patentably distinct? I think in the purest sense it does. I don't think that's what happened here with their suggestion of mootness because, as I said before, they cited no authority for this proposition. This is something they're just raising right now in terms of this burden-shifting framework. They didn't articulate and say, Katz tells you that you must do this, this, and this, this, and this, and then now the burden's on Hoi Pao to present in response to our suggestion of mootness why these claims are patentably indistinct. To come back to where I started from, Your Honor, they said that this case appears to be moot. Well, it's either moot or it's not moot. They didn't cite any test for mootness. We did. We responded and explained why we don't think these claims are moot, and now we're hearing today, and counsel has devoted his entire time to this issue, that we should have done more. Well, that's not what the response to this suggestion of mootness required. And I wanted to point out earlier, Your Honor, we did raise these issues in our petition for re-hearing in the Twitter case and re-hearing on BAC. We went through and we pointed out specific claim construction issues that were, in fact, in dispute with respect to the patents that we're talking about here. So to say that we've never raised it before this court is not entirely accurate. I heard the... Anything else, colleagues? Yeah, the time is up. I was just wondering if Judge Raynor or Judge Hughes had anything else. No, I don't. No, nothing further. Thank you, Your Honor. Thank you. Okay, Mr. Perry, we'll hear you on recital. Very briefly, Your Honors. First, Chief Judge Prost, these claims, these 34 claims, were all asserted in the first amended complaint out of the hundreds in the patents. So these are not new claims. These were asserted in the complaint. Judge Koh recognized the near-identicalness of all of the claims and ordered Voight-Powell to pick its best 20, and you've heard the rest of that. I'd like to address this question of claim construction. Judge Koh did not construe the claims before making her 101 decision. Voight-Powell did challenge that ruling in the 101 appeal, and this court rejected it. So the court ruled... Mr. Perry. Yes, Your Honor. Perry, this is Judge Hughes. Sorry to interrupt you, but your time is short, and I just want to ask this. Let's assume they haven't waived the argument that these claims are patently distinct. I still am a little curious as to how you think we could determine the 101 eligibility issue for the first time on appeal, even as a matter of res judicata. I mean, I think we've held in other cases where at least we've never, in appeals from IPRs where you can't raise 101, decided to find the patents ineligible on 101 as an alternative ground. I don't think we've ever felt we could do that. Why could we do it in the context of res judicata? Your Honor, res judicata turns only on a full and fair opportunity to litigate a final judgment from a court of jurisdiction on the same cause of action. Simple error makes clear in a patent case that the question whether the cause of action is identical is whether the scope of the patent claims is essentially the same. The underlying defect is immaterial. It doesn't matter if they had been ruled obvious, anticipated, double patenting or anything else. Let me just interrupt you to refocus again because I think that argument is absolutely right. The claims that were ultimately asserted decided as ineligible and affirmed by us. There's nothing left to decide there. But for the unasserted claims we've held in other cases where res judicata apply, they have to be shown to be patently nondistinct. And that's the question I'm struggling with how that has to be answered, right? That is not a ministerial thing, assuming there's no waiver. And how do we do that for the first time on appeal? Yes, Your Honor. Let me answer that in two steps if I may. First, these are not unasserted claims. They are asserted claims that were not included in the 101 order. That's a distinction. They are asserted in the complaint. The Simple Air case, which is the lodestar here, involved different patents, different claims that were never asserted in the first case, so that we're already one step closer to the ordinary res judicata. It's the same patent and claims that were actually asserted in the complaint. Second, it is clear that the court has to make a determination. May I continue? Oh, please. Thank you, Your Honor. It is clear that the court has to make a determination of patentable distinctness, and I think that we are in uncharted waters. I've made no bones about that, which is why the word appears to be moot. I think the question of burden is critical. Apple has made the showing that these claims, we believe, are essentially the same. Judge Koh accepted that. The board, which did do claim construction, also accepted that. It adjudicated all 34 claims as identical. There's no distinction among the claims made by the board or by Judge Koh. Therefore, we think the burden is on Voight-Pell. I've already said they had three opportunities. If the court wants to give them a fourth, fine. We don't think they could ever make the showing. So, you know, if that's the question as one of procedure, let's have full and fair opportunity. Let Voight-Pell come to this court and try to show that there is patentable distinctness. But the point, the reason, Judge Hughes, to get to the nub of your question, why this court ought to do it in the first place, is because of the Article III limitations on its power. You have before you a board determination that has problems, we submit, that this court will need to adjudicate if the claim is not moot and does not need to adjudicate if the claim is moot, the case is moot, the appeal is moot. And that, we believe Article III puts an obligation on the court to determine its own jurisdiction. We believe we've made the showing that that jurisdiction is lacking as a result of Twitter. We've been raising this in every brief we've filed in this case. And that, you know, at some point, Voight-Pell either has to give up or try to make a showing. But, you know, we've made the showing that they're essentially the same. And if you want us to show more, we can, of course. You know, a claim chart, we can line them all up. But you can also read them. There is no, these claims are all variations on a theme. And we think that that is the end of the case. Thank you. We thank both sides. And the case is submitted.